UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| J & J Sports Productions, Inc., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Urania Elizabeth Segura a/k/a Urania ) <br> E. Segura, doing business as ) <br> Herradura Sports Bar & Grill a/k/a ) <br> Herradura, a/k/a Costa del Sol ) <br> Restaurant, ) <br> ) <br> Defendants. ) <br> _____ ) | C/A. No.: 6:11-cv-01458-GRA <br><br> **ORDER** <br> (Written Opinion) |

This matter comes before the Court on Plaintiff's Motion for Default Judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. Plaintiff, J & J Sports Productions, Inc., alleges unauthorized use of communications in violation of 47 U.S.C. § 605 and unauthorized reception of cable service in violation of 47 U.S.C. § 553. Plaintiff alleges Defendants unlawfully and willfully intercepted and exhibited *"The Event": Manny Pacquiao v. Joshua Clottey, WBO Welterweight Championship Fight Program* on March 13, 2010, for the purpose of commercial advantage and private financial gain, and with full knowledge that the program was not to be received or exhibited without authorization. On February 6, 2012, upon Plaintiff's request, the Clerk of Court entered a default. ECF No. 12.

Upon careful consideration of the record of this case, the Court finds that the Defendants were properly served with the Complaint and failed to answer or otherwise defend the action, and the Clerk has duly entered default against Defendants. The Court further finds that in light of Defendants' failure to answer the Complaint, there is no genuine issue of material fact to be submitted to the Court, and Plaintiff is entitled to judgment by default.

With regard to damages, Plaintiff seeks statutory and enhanced damages and attorney's fees and costs under 47 U.S.C. § 605. Pursuant to 47 U.S.C. § 605, which addresses unauthorized use of communications, the aggrieved party may recover statutory damages for each violation in an amount not less than $1,000 or more than $10,000. 47 U.S.C. § 605(e)(3)(C)(i)(II).[1]

If the Court finds this statute was violated "willfully and for purposes of direct or indirect commercial advantage or private financial gain," the Court may award an additional sum, up to $100,000.[2] 47 U.S.C. § 605 (e)(C)(ii).

In determining whether the Defendants' conduct was willful, the Court made inquiry into the various methods of obtaining a cable transmission of a pay-per-view event such as the Pacquiao v. Clottey, WBO Welterweight Championship Fight. Joseph Gagliardi, President of Plaintiff, J & J Sports Productions, Inc., states, in his

---

[1] Section 553 provides that the aggrieved party may recover damages in an amount not less than $250 or more than $10,000 for the unauthorized use reception of cable service. 47 U.S.C. § 553(c)(3)(A)(ii). Plaintiff does not seek damages under 47 U.S.C. § 553 and has not been afforded the benefit of discovery due to Defendants' default. This Court finds that 47 U.S.C. § 553 is not applicable in this action; however, were this Court to determine otherwise, it would award damages as close as permissible to the amount awarded under § 605.

[2] Section 605 provides for additional damages for violating that statute "willfully and for purposes of direct or indirect commercial advantage or private financial gain" up to $50,000. 47 U.S.C. 553(c)(3)(B).

Affidavit in support of Plaintiff's Motion for Default Judgment, that to the best of his knowledge, "[Plaintiff's] programming is not and cannot be mistakenly, innocently or accidentally intercepted." Pl.'s Aff. at 3, ECF No. 13-3 (Feb. 16, 2012) (emphasis omitted). Gagliardi proceeds to list examples of ways in which "a signal pirate can unlawfully intercept and broadcast" programming. *Id.* at 3–4. Based upon the limited methods of obtaining the signal and the high unlikelihood that an individual or commercial establishment would receive fortuitously such a transmission, the Court finds Defendant willfully pirated the signal for purposes of direct or indirect commercial advantage and private financial gain. *See Kingvision Pay-Per-View, Ltd. v. Admiral's Anchor, Inc. No. 2*, 175 F. Supp. 2d 810, 812 (S.D. W. Va. 2001).

Plaintiff seeks $10,000.00 in statutory damages plus an additional $100,000.00 based on Defendants alleged willful violations of § 605, as well as attorney's fees and costs. Plaintiff requests maximum statutory damages of $10,000 and maximum enhanced damages up to the statutory maximum of $100,000 in order to "realize the Congressional intent of deterring future piracy." *See Motion* at 8, ECF No. 13-1. Plaintiff reasons that it has lost millions of dollars in licensing fees as the result of program pirating and spent a lot of time and money in policing its signals and protecting its interests. Plaintiff also argues that not sufficiently punishing violators hurts establishments who legally purchase the rights and have to recoup the expense of the licensing fee.

However, Plaintiff concedes that, in published cases in the Fourth Circuit, damages have been estimated based on estimated capacity or maximum occupancy multiplied by a licensing fee and that total multiplied by a factor of five. *See Kingvision*, 172 F. Supp. 2d at 812; *Entertainment by J&J v. Gridiron*, 232 F. Supp. 2d 679, 681 (S.D. W. Va. 2001). Plaintiff stated that Defendants would normally have paid a commercial sublicense fee of $1,800.00, based on Defendants' maximum fire code occupancy of 50 persons.[3] *See* Pl.'s Aff. at 3, ECF No. 13-3 (Feb. 16, 2012).

Based on Defendants' maximum fire code occupancy of 50 persons and Plaintiff's licensing fee schedule, the Court finds that Plaintiff suffered actual damages in the amount $1,800.00. Because Defendants willfully violated 47 U.S.C. § 605(e)(3)(B)(iii), the Court multiplies Plaintiff's actual damages by 5 for a damage award of $9,000.

Plaintiff also requests attorney's fees in the amount of $1,679.55 and costs of litigation in the amount of $1,222.92. However, after thoroughly reviewing the record, this Court finds attorney's fees in the amount of $1,679.55 to be reasonable. However, this Court finds that the record supports awarding costs of litigation in the amount of $1,192.92.[4] Accordingly, Plaintiff's judgment shall

---

[3] Plaintiff charges $1,800.00 for the first 100 people plus $18.00 per person above 100. *See* Exhibit 1, ECF No. 13-3.

[4] Based on Plaintiff's counsels' affidavits, the costs of litigation for this case are $1,192.92, which includes $575.00 for investigative costs, $350.00 for complaint filing fee, $200.00 for service of process charges, and $67.92 for miscellaneous costs.

include an award for reasonable attorney's fees and costs in the amount of $2,872.47.

Based on the foregoing, Plaintiff's motion for default judgment and inquiry into damages is GRANTED. Judgment will be entered in favor of the Plaintiff in the amount of $11,872.47.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Default Judgment be **GRANTED** and judgment will be entered in favor of the Plaintiff in the amount of $11,872.47.

**IT IS FURTHER ORDERED** the Clerk send a copy of this Memorandum Opinion and Order Granting Default Judgment and Awarding Damages to counsel of record and *pro se* parties by first class mail.

**IT IS SO ORDERED.**

G. Ross Anderson, Jr.
Senior United States District Judge

March 21, 2012
Anderson, South Carolina

## NOTICE OF RIGHT TO APPEAL

Pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, Plaintiff has the right to appeal this Order within thirty (30) days from the date of its entry. Failure to meet this deadline, as modified by Rule 4 of the Federal Rules of Appellate Procedure, **will waive the right to appeal.**